Good morning, Your Honor. May it please the Court, Michael Marks, Federal Defenders, for Mr. Mendoza. I have not much time and a lot of issues to touch on. I'll try to move quickly through the conditions first. With regard to Condition 7, that deals with sexually explicit materials, we're not asking the Court to really do anything new. If the Court construes this condition consistent with the opinion in NERCI, then we really don't have any procedural challenges beyond that. To what remains. There are two things about that condition, though, that we would ask that go a bit beyond NERCI. One is that the condition as written, and NERCI didn't discuss this, prohibits patronizing places where these materials are available. To the extent that that does not prohibit them, as the District Court said, from, say, going to 7-Eleven where a Playboy magazine might be available, we're asking the Court to construe that part of it in the same way, to say that he's prohibited from going to places that specialize, or something of that nature, specialize in those sort of materials. I think that the Court, speaking colloquially, said no nudie bars, no pornographical bookstores, that kind of thing. So I think that needs to be made clear, because it wasn't made clear in NERCI. The other thing that we're asking... Made clear by us, rather than asking the District Court to make that clear. Well, that's where I was headed. I think that, just as the Court did in NERCI, this Court should make that clear, but we are asking for this Court to remand with instructions for the District Court to make that clear in the judgment. The difference between this case and NERCI is that Mr. NERCI was actually released at the time the appeal was pending. So he'd already been assigned a probation officer, and that probation officer was requesting the condition. When that opinion came out, that probation officer was on notice about what was included and what was not included in that condition. In this case, Mr. Mendoza, unfortunately, will be in prison for a number of years before he's assigned a probation officer. We don't know where he'll be supervised. We don't know if Judge Burns will be the judge supervising him. So that the probation officer who does eventually supervise him has notice exactly of what this provision includes and does not include. We're asking the Court to remand with specific instructions to construe it essentially as NERCI did. Moving on to Condition 8. It would be in writing. It's just that it would be a writing signed by three judges and not one. Well, the reason that we think it's appropriate in this case, again, is that we want the probation officer to have notice. And they don't read Ninth Circuit cases. They might. They might. I don't know. There's no guarantee. Whether they read it or not, if they bring violation proceedings against him, his lawyer will get the Ninth Circuit opinion and say this is the law of the case. Well, and the problem is then he potentially is under arrest and his liberty is taken away for as long as it takes to adjudicate that. Or maybe it won't even happen at all. Well, it may. I cited the Aquino case, a pretty recent case, in a 20HA letter. I don't know if the Court's had time to review that yet. But essentially at the end it says we don't want the probationer to have to guess at what's included and not included. And you may have an overzealous probation officer who attempts to revoke him. And given the fact that I'm hoping that this case goes back to Judge Burns in at least some limited way, I think it's a small remedy and it could make a big difference in Mr. Mendoza's life in five or six years. What's the story? I'm sorry, Judge Ward. Go ahead. I'm sorry. I think maybe we were headed to the same thing, the same point. The District Court clearly said that he wanted a 20-year term of supervised release that took him until 46, but he actually gave him a supervised release until he was the age of 52. Do you think we should send it back to let the Court fix that if it so wants to? Well, I think that what the Court did in its analysis talks twice about what term is appropriate. In the first instance, he said, I think, until he's 50. And in the second instance, he said 20 years, that takes us to 46. I think 46 is sufficient. I think the Court has essentially in making that ruling already said that 46 months is sufficient, or excuse me, age 46. Whatever term takes us to age 46 is sufficient but not greater than necessary. I think if the Court were to impose more than that, we would be back here with a substantive reasonableness challenge saying, look, the judge already said until age 46 is enough, and so he can't now change his mind on remand. Well, it's not clear whether he wanted the guy to be on supervised release until he's 46, or if he wanted him to be on supervised release for 20 years and just got the age wrong. Well, I think that in the first instance when he addressed it, he said, I'm thinking that unsupervised release until 50 works for me. And then they leave the issue behind. They come back to it when he's actually imposing the sentence. And he says 20 years, and he says 46. And he says 46 is where I think the urge will be enough. I've been around the block more. And what I can say is we think it's clear on the record that Judge Burns made a finding that at age 46, no further supervision is required. How can anybody make a decision like that? I mean, he's kind of making observations about the way things are and the way things will be. But the notion of saying, my God, you know, I challenge you to find any knowledgeable expert who would say, you know, this person's dangerous for many years out, but at 46 he's going to be just fine. It's just an observation, wasn't it? Well, to the extent that it's difficult to predict how much supervision is really necessary, I think that's a difficult task. It's why the defense counsel objected to the length that the probation officer had recommended. And I really don't think there's any distinction between saying 20 years. I mean, it's a nice round number. I've never heard anybody impose 17 years. They are, I think, trying to do the best they can to predict. I think what perhaps Judge Burns did was he said, okay, 20 years is a nice round number. But I do think he certainly considered, well, where does that get me? He didn't leave it there. Because he had earlier talked about that there was an incident at 14 and the defendant was 26, so Mr. Mendoza has had these urges for about 12 years, maybe 14. And he said, that's a starting place for me. I think at least that amount of supervised release is warranted. And then the question is, is any more warranted? And I think what he did is he said, okay, well, maybe 20 years. And he said, 20 years works for me because it gets us to age 46. He didn't put it quite because it gets us to age 46. I'm sure he did. He said he will be 46 at the end of it, didn't he? Well, he said, the court selects a 20-year term of supervised release. I think that that's appropriate. That would take him to age 46, and it would also provide a track record. You want to go back for resentencing? Well, I suppose what we want is for the court to send it back and say, supervised release until the age of 46. If the court, if there's room for debate, then certainly it at least has to go back for Judge Burns to make clear, was it the 20 years or was it the 46 and have a That's fine, but Judge Burns also made clear at least three times that I have, and I'm not sure, at least three times in my law clerk's memo, let's put it that way. And that, well, we'll add it on to the supervised release, and we'll take it off the amount of time he spends incarcerated. And he made it clear, much clearer than you thought it was going to be. Age 46 was somehow a magic number. He made it clear that he was doing kind of a decent thing by taking it off, doing the right thing in terms of rehabilitation, to take it off one and put it on the other. And you're telling me if we send it back, he can't say, okay, I'll take it down to 15 years supervised release and add five years to the sentence, which still leaves him under the guidelines minimum, I think. Well, I think what, we're not asking for full resentencing. I'm sure. No, what we're asking for, and if that was what the court was asking, it's clearly limited to just the supervised release conditions and the term of supervised release. If the court says on remand, I think, no, 20 years was what I meant to do, and if I did the math error wrong, it's 20. If the court reads this to interpret that this custodial, which is how I read it, this custodial term was appropriate, and then a term of supervised release until age 46 is appropriate, and those two things together work to create a reasonable sentence, then that's what we want the judge to impose. If the judge on remand says, no, I really thought the 20 years was the, and I said 46, but I didn't mean it, I suppose that's an outcome that needs to be examined by the district court. But certainly I don't think, if the court sends it back and says, no, you can't do more than 46, and Judge Burns says, well, that's not what I meant, then I think that puts us in a strange procedural place where he doesn't then have to make up for what he views as a limiting remand on the custodial. I just don't think he can impose more time than he already did. I see you're out of time. Let me see if there's word large. Does Zach have anything further? No. Thank you. Thank you very much. Good morning. Good morning. May it please the court. Charlotte Kaiser on behalf of the United States. I would like to address what Judge Sachs had touched on was the idea of the 20 years supervised release portion of the sentence. The standard is clearly erroneous facts. And in looking at the record, if defense is saying, well, it should be 46, then even according to the record, that's not the right term of supervised release because the judge said 15 years of supervised release is not enough. The defendant here is an admitted contact offender. He sexually abused an elementary school age child and he got a very generous sentence from the judge in terms of the custodial time, 75 months custody. In fact, the judge indicated he normally sentences defendants in these cases to 68 months. He only went up a small increment despite the fact that the defendant had sexually abused this child and then engaged, had therapy, but then relapsed essentially to the degree where he was collecting child pornography. And he had a huge collection that he was categorizing by month and year. At that point, Judge Burns, in his discretion, made the determination, I'm going to give you basically half of what the government is requesting according to the guidelines, but I'm going to give you more than 15 years. I realize you're objecting to 15 years, but I don't think it's in your best interest. I'm going to give you 20 years. He says at times age 50, 46, what have you. But the common sense in here prevails. If this case gets remanded, what's basically going to happen? The judge is going to say 20 years. Done. That's it. So this is not clearly erroneous facts. Looking at the record, Judge Burns made it explicit, 20 years to offset the fact that I'm giving you a generous reduction here in your sentence. So now looking at the other conditions that were addressed in the appeal, I think something I do want to make very clear here, it was not discussed as to defense, but just as to the PPG condition. And I'm not going to follow my fellow prosecutor and dance around or try and say PPG three times over or anything, but the bottom line is that Esparza makes clear that unless it's explicitly stated in the condition, it's not included. And Roybal, which the appellant also cited in its briefing, also affirmed and said, look, it's not stated, so it's not included. Bebo Lopez, which is an unpublished opinion, just discussed it because it was remanding the case for other reasons. Regarding condition number seven, sexually explicit conduct, as to this case, essentially what happened is I think the court made clear as to the extent of the case. I think what we have before the court is a procedural error argument. It's not a substantive reasonableness, but to the degree there is some kind of underlying argument there, the court made very clear as to how it was limiting the condition. Nurki makes clear as to how the condition should be interpreted. Again, in Nurki, the court affirmed it did not remand. And then again, impermissible delegation of authority. Your Honors, I think the Stevens case makes clear this is non-peniological function of the probation officer. Does it matter to you on the specific issue, whether it's we who say it or we set it out and say, please make that clear to the district judge? I understand it's more work for the world at large, but does it matter very much? Does it matter at all? I think it does, because I think it's something that is very clear on the record in terms of how Nurki directed it, and the argument here was procedural error. The court made its findings as to why he should be restricted. And again, Nurki made clear this is not an infringement on First Amendment liberty. So I don't think that that's the issue really before the court as to whether it should be remanded to tailor it. But to the extent that there is an issue to that, the court made clear that it sustained the objection and did tailor it and said this doesn't apply to R-rated movies. This doesn't apply to what have you. And defendant was there. He was the one who was advised as to that. He was the one who made it clear. The argument is that the eventual probation official was not there because we don't know who that person will be. And we're now dealing with what's going to happen down the line. And I think the thing is similar to the Sparza case where it says, well, physiological testing will not include PPG unless explicit. We can look at Nurki and read it to be, well, this does not include R-rated movies and what have you. I think the case law coming now from Nurki is that any probation officer looking at it knows that that's what it is. And to be perfectly honest, pragmatically, Your Honor, I did the oral argument for Nurki. I didn't do the briefing on it. But then I did do the briefing when it was considered sua sponte for en banc review, and both parties advised not to be heard sua sponte on it. I struggled to find a case where the court for revocation proceeding where a defendant was found in revocation because they went to an R-rated movie based on that condition. I found one case, I think, in the Fifth Circuit, but the violation had to deal with the defendant filming himself having sex with his girlfriend, which clearly falls within the condition. So I also think pragmatically it's not something that's used such as... It's not necessary. Yeah. So why go to the extra work? Why go to the extra length? That's where we stand. So unless the court has any additional questions, I would submit. Thank you very much. Thank you. Mr. Marks, I think you are out of time. We'll give you a minute in rebuttal if you want to take it. Thank you. Just to the last issue, this court has, in NERCI, construed the condition the way that it has. That ruling doesn't apply in other circuits. I have many clients who have decided, you know, I get out five years later, mom has moved to Massachusetts, and they move to Massachusetts. We can't guarantee that either the probation officer or the people who are ultimately adjudicating the case will be bound by NERCI. And so I think the condition has to be explicit in that manner. Thank you. Otherwise, I submit. Thank you. Thank you, Mr. Keiser. The case just argued is submitted. We'll stand and recess for this session.
judges: Silverman, Sack, Wardlaw